## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,    :
:
        Plaintiff,    :
:
        v.    :        Criminal Action No. 07- 028 JJF
:
LICURTIS G. WHITNEY, and    :
JONATHAN L. EWELL,    :
:
        Defendants.    :

### GOVERNMENT'S CONSOLIDATED RESPONSE TO PRETRIAL MOTIONS

The United States of America, by and through its counsel, Colm F. Connolly, United

States Attorney for the District of Delaware, and Gregory Welsh, Special Assistant United

States Attorney for said District, hereby responds to the Motions to Suppress filed by

Defendants Licurtis G. Whitney and Jonathan Ewell and to additional motions filed by

Defendant Whitney.

### I.  MOTIONS TO SUPPRESS

#### 1. Factual Background

In the early morning hours of December 10, 2006, Officer Malcolm H. Stoddard of the

Wilmington Police Department and Delaware Probation Officer William H. Dupont received

information that the occupants of a white Acura with Maryland tags and tinted windows were

in possession of a significant quantity of controlled substances in the vicinity of the 2700

block of N. Madison Street in Wilmington, Delaware.  Officers Stoddard and Dupont were

assigned to the Operation Safe Streets task force, which is a combined effort of the

Wilmington Police Department and Delaware State Probation and Parole.

Corporal Steven Brock of the Wilmington Police Department thereafter went to the 2700 block of N. Madison Street in an unmarked police vehicle and observed a white Acura with Maryland tags and tinted windows sitting next to the curb. Corporal Brock circled the block and as he returned to N. Madison Street observed the white Acura pulling away from the curb. Corporal Brock followed the Acura to the intersection of 24th Street and N. Madison Street, where the Acura made a right turn onto W. 24th Street without using a turn signal, in violation of 21 Del.C. § 4155. As Corporal Brock's vehicle was not equipped with emergency equipment, he requested that Officers Stoddard and Dupont assist him in stopping the Acura. Corporal Brock continued to follow the Acura until it was stopped by the other Officers.

At approximately 1:58 a.m., Officers Stoddard and Dupont activated their vehicle's emergency equipment and stopped the Acura on Concord Avenue at the intersection with Broom Street. The Officers got out of their vehicle and approached the Acura on foot. As they reached the rear portion of the Acura, they both observed the driver reaching with his right arm to the area behind his seat. When Officer Dupont reached the driver's door, he told the driver, Licurtis Whitney, that he was being stopped for the turn signal violation. Officer Dupont, following standard procedure for a traffic stop, asked Whitney for his license and registration, asked Whitney to remove the keys from the ignition and hand them to the Officer, and asked Whitney to then place his hands on the steering wheel. This was done to protect the officers and to ensure that the driver would not attempt to leave during the traffic stop.

Officer Dupont observed small white crumbs on Whitney's shirt that appeared to be crack cocaine. When Officer Dupont asked Whitney about the crumbs, there was no

2

explanation given. The Officers also noticed that both men's hands were visibly shaking, their voices were shaky, and their breathing seemed labored.

Officer Dupont then shined a light onto the rear floorboard of the Acura behind the driver's seat and in the area in which he had seen Whitney reaching. Officer Dupont observed on the floor behind the driver a knotted clear plastic sandwich bag which contained a large chunk of an off-white substance which he recognized as being consistent with crack cocaine. Officer Dupont placed Whitney under arrest and communicated to Officer Stoddard that he had located drugs in the Acura.

Officer Stoddard had approached the passenger side of the vehicle. Officer Stoddard saw a knotted clear sandwich bag on Ewell's lap which was partially protruding from under Ewell's jacket and which contained an off-white substance which Officer Stoddard recognized as being consistent with crack cocaine. Officer Stoddard instructed Ewell to get out of the Acura and, when Ewell did so, the sandwich bag fell onto Officer Stoddard's foot.

Each knotted sandwich bag contained approximately 125 grams of cocaine base. Both bags were warm to the touch, which meant to the Officers that the cocaine base had recently been "cooked."

Whitney was charged with the turn signal violation, and both Defendants were charged with State offenses relating to the cocaine base.

### 2. Motions to Suppress Evidence

The Government does not dispute the right of driver Whitney or passenger Ewell to challenge the recovery of the cocaine base from them. *Brendlin v. California*, 127 S.Ct. 2400, 2403 (2007)(both driver and passenger can challenge the constitutionality of a traffic stop).

3

A traffic stop is constitutionally reasonable when an objective review of the facts shows that the officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3rd Cir. 2006).

In this case, the Acura was stopped for the traffic offense of making a turn without using a turn signal. The law is well settled that so long as there are objectively reasonable grounds for a traffic stop, it matters not that the officers making the stop may have had other motivations. *Whren v. United States*, 517 U.S. 806, 813 (1996)(Court does not entertain Fourth Amendment challenges based on the actual motivations of individual officers); *United States v. Delfin-Colina, supra* (quoting passage from *Whren* cited above); *Smith v. Marasco*, 318 F.3d 497, 514 (3rd Cir. 2003)("Improper motive, however, is irrelevant to the question whether the objective facts available to the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense"); *United States v. Toney*, 124 Fed.Appx. 713, 715 (3rd Cir. 2005)(where police have reason to believe traffic violation has occurred, their actual motives in conducting the traffic stop are irrelevant); *United States v. Ayers*, 2003 WL 292086, *5 (D.Del.)("the subjective intentions or thoughts of officers are irrelevant for review under the Fourth Amendment as long as there is probable cause to believe that even a minor crime has been committed").

The stop of the Acura in this case is factually similar to the stop at issue in *Whren v. United States, supra,* in which plainclothes vice officers in a "high drug area" of the District of Columbia saw a vehicle in suspicious circumstances. The officers watched the vehicle as it waited for an unusually long time at an intersection, then the vehicle made a right turn without

4

signaling and sped away. The police followed and stopped the vehicle. When an officer

approached on foot, he observed inside the vehicle two large plastic bags of what turned out to

be cocaine base in Whren's hands. The defendants claimed that stopping the vehicle to issue

a traffic warning was pretextual and that there was no reasonable suspicion of drug activity to

justify the stop. The Court disagreed and held that the temporary detention of a motorist upon

probable cause to believe that he has violated the traffic laws does not violate the Fourth

Amendment, even if a reasonable officer would not have stopped the vehicle without an

additional law enforcement objective, and thus the actual motivations of the officers do not

affect the constitutional analysis. 517 U.S. at 810-13.

Subsequently, courts have held that the Supreme Court in the passage cited above from

*Whren* did not intend to change the standard for a traffic stop from reasonable suspicion to

probable cause, and thus the reasonable suspicion standard is applied. *United States v. Delfin-*

*Colina, supra*, at 397.

It is clear that the stop of the Acura was lawful as Corporal Brock personally observed

the traffic infraction, providing at least reasonable suspicion to stop the vehicle. Indeed,

Whitney was charged with the traffic offense. Within seconds of and while conducting that

traffic stop, Officer Dupont discovered the bag of cocaine base on the back floorboard behind

Whitney and Officer Stoddard discovered the bag of cocaine base on the lap of Ewell. Both

men were thus properly arrested and the evidence lawfully seized.

The scope of the actions taken by the officers in this case prior to the discovery of the

drugs did not exceed the permissible bounds of the traffic stop. During a traffic stop, an

officer may request a driver's license and vehicle registration, run a computer check, and issue

5

a citation. *United States v. Foreman,* 369 F.3d 776, 781 (4th Cir. 2004). In this case, the

officers were in the very preliminary stages of the traffic stop when the drugs were discovered,

thus there was no Fourth Amendment violation.

### 3. Motion to Suppress Statements[1]

**A.**     On December 10, 2006, in the first few seconds of the traffic stop outlined above,

Officer Dupont asked Whitney what the small white crumbs were that he observed on Whitney's

shirt. Whitney replied that he did not know. At this point in the traffic stop, the drugs had not

yet been discovered and Whitney had not been taken into custody. In order for the rights of

*Miranda v. Arizona*, 384 U.S. 436 (1966) to apply, there must be both custody and interrogation.

*Illinois v. Perkins*, 496 U.S. 292, 297 (1990). However, persons detained during a routine traffic

stop are not deemed to be in custody for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420,

441 (1984)(where a question to a stopped motorist about his drinking after he had failed a field

sobriety test was not deemed to be custodial interrogation under *Miranda,* the Court holding that

the brief and public nature of a traffic stop would not cause a reasonable person to believe that

he was in custody). *Accord, United States v. Anderson*, 859 F.2d 1171, 1177 (3rd Cir. 1988)

(motorist not in custody even though officer received numerous suspicious explanations from the

motorist for the presence of a large sum of currency and conducted a 10 to 15 minute search of

---

[1]    Defendant Whitney was also interviewed on January 12, 2007, by Maryland investigators
and agents of the Drug Enforcement Administration. As this interview was in the nature of a proffer,
and no *Miranda* warnings were given or waived, the Government will not seek to use any statements
from this interview in its case-in-chief.

the vehicle). Thus, the statement by Whitney denying knowledge of the small white crumbs is admissible.

**B.**       On March 6, 2007, Whitney was arrested in Maryland on the instant Indictment by ATF agents. Whitney was advised of his *Miranda* rights, said that he understood them and wished to waive them, and executed a written ATF advice of rights and waiver form. Whitney thereafter made numerous incriminating statements about his drug trafficking activities.

It should be noted that Whitney made one statement about co-defendant Ewell's involvement with the drugs seized on December 10, 2006. The Government will not seek to offer that specific statement into evidence at a joint trial of the defendants to avoid any issue under *Bruton v. United States*, 391 U.S. 123, 137 (1968).

To admit Whitney's remaining statements from the March 6 interview, the totality of the circumstances must disclose that he knowingly, voluntarily, and intelligently waived his *Miranda* rights. *Miranda*, 384 U.S. at 475; *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The voluntariness of a defendant's statement is based upon the trial court's consideration of all the circumstances surrounding the giving of the confession. 18 U.S.C. §3501(b); *Brewer v. Williams*, 430 U.S. 387, 402 (1987). The factual inquiry as to whether, considering all the circumstances, law enforcement officers have overborne the will of the accused centers on the conduct of the law enforcement officers as well as the suspect's capacity to resist any pressure by law enforcement. A "totality of circumstances" inquiry allows the trial court a flexible standard for determining voluntariness in light of both the characteristics of the accused and the details of the investigation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

7

Clearly, the defendant's written waiver, age, intelligence, and familiarity with the criminal justice system establish that he knowingly, voluntarily and intelligently waived his *Miranda* rights prior to making the statements at issue.

## II. MOTION TO JOIN IN PRE-TRIAL MOTIONS OF CO-DEFENDANT

As the only pretrial motion filed by co-Defendant Ewell was the motion to suppress the fruits of the traffic stop, which Defendant Whitney has also challenged, this Motion is moot.

## III. MOTION FOR PRODUCTION OF LAW ENFORCEMENT INTERVIEW REPORTS OR NOTES WITH INDIVIDUALS WHO WILL NOT BE WITNESSES AT TRIAL

Defendant Whitney seeks discovery of statements of individuals who will not be witnesses at trial. Therefore, such statements are not within the scope of the Jencks Act, 18 U.S.C. § 3500. The defendant instead seeks this material under *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Agurs*, 427 U.S. 97 (1976). The Government acknowledges its *Brady* obligations and will disclose all *Brady* material if and when it is discovered by the Government.

## IV. MOTION TO COMPEL DISCOVERY AND PRODUCTION OF EXCULPATORY MATERIAL

Defendant Whitney seeks discovery of exculpatory material under *Brady v. Maryland, supra*. The Government acknowledges its *Brady* obligations and will disclose all *Brady* material if and when it is discovered by the Government.

## V. MOTION FOR PRE-TRIAL DISCLOSURE OF GOVERNMENT'S INTENTION TO RELY UPON 404(B) MATERIAL

The Government agrees to provide pre-trial notice of any evidence of other wrongs, etc. which it intends to offer under Rule 404(b) of the Federal Rules of Evidence. At this time, the

Government has no intention to offer such evidence, but will advise counsel should that intention change.

## VI.  MOTION FOR EARLY DISCLOSURE OF 18 U.S.C. § 3500(B) MATERIAL

Defendant Whitney seeks disclosure of 18 U.S.C. § 3500 material two weeks before trial. The Government agrees to provide that material to both counsel as requested.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: __/s/ Gregory Welsh_____
    Gregory Welsh
    Special Assistant United States Attorney
    36 South Charles Street
    Fourth Floor
    Baltimore, Maryland 21201
    (410) 209-4906

9

## CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07- 028 JJF |
| | : | |
| LICURTIS G. WHITNEY, and | : | |
| JONATHAN L. EWELL, | : | |
| | : | |
| Defendants. | : | |

I, Sharon L. Bernardo, an employee of the United States Attorney's Office, hereby certify

that on October 4, 2007, I electronically filed the foregoing:

### GOVERNMENT'S CONSOLIDATED RESPONSE TO PRETRIAL MOTIONS

with the Clerk of the Court using the CM/ECF  which will send notification of such filing to:

> Eleni Kousoulis, Esquire
> Assistant Federal Public Defender
> 704 King Street, Suite 110
> Wilmington, Delaware 19801
> ecf_ek@msn.com

I further certify a copy of the foregoing motion was sent via U.S. Mail, postage prepaid, to:

> Peter Levin, Esquire
> 1927 Hamilton Street
> Philadelphia, PA   19130