**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Gregory Welsh*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4906*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*
*TTY/TDD: 410-962-4462*

January 22, 2008

Honorable Joseph J. Farnan, Jr.
United States District Court
844 N. King Street
Wilmington, DE 19801

Re:  Letter Memorandum
     United States v. Whitney & Ewell
     Criminal Case No. 07-028 JJF

Dear Judge Farnan:

### 1. Facts

In the early morning hours of December 10, 2006, Corporal Stephen Brock and Officer Malcolm H. Stoddard of the Wilmington Police Department and Delaware Probation Officer William H. Dupont received information that the occupants of a white Acura with Maryland tags and tinted windows were picking up a significant quantity of controlled substances near the intersection of 27th Street and N. Madison Street in Wilmington, Delaware. (Tr.[1] 6, 10, 25, 33, 71) Corporal Brock and Officers Stoddard and Dupont were assigned to the Operation Safe Streets task force, which is a combined effort of the Wilmington Police Department and Delaware State Probation and Parole. (Tr. 5, 32, 65)

Corporal Brock thereafter went to 27th Street in an unmarked vehicle and observed the

---

[1] "Tr." refers to the transcript of the evidentiary hearing held on December 5, 2007.

described Acura pulled to the side of the street just prior to the intersection with N. Madison Street. He observed that the vehicle was occupied and running and appeared to have two occupants, that the front passenger window was down, and that someone on the passenger's side outside the car was leaning into the car and having a conversation with the occupants. (Tr. 6-7, 14, 27-28) This occurred less than five minutes after receiving the information about the Acura. (Tr. 10, 24, 26) Corporal Brock circled the block and as he returned to the intersection of 27th Street and N. Madison Street he observed that the white Acura had turned southbound on N. Madison Street. Corporal Brock followed the Acura to the intersection of 24th Street and N. Madison Street, where the Acura made a right turn onto 24th Street without using a turn signal, in violation of 21 Del.C. § 4155. (Tr. 7, 33-34, 52-53, 66, 90)(See Government's Exhibit 2, a copy of that traffic regulation) The Acura and Corporal Brock's vehicle were the only ones being operated on N. Madison Street at that time. (Tr. 7-8) As Corporal Brock's vehicle was not equipped with emergency equipment, he requested that Officers Stoddard and Dupont assist him in stopping the Acura for the traffic violation. Corporal Brock continued to follow the Acura until it was stopped by the other Officers. (Tr. 8-9, 34, 73)

At approximately 1:58 a.m., Officers Stoddard and Dupont activated their vehicle's emergency equipment and stopped the Acura on Concord Avenue at the intersection with Broom Street, which is a very well-lit intersection. (Tr. 34, 56, 66-67) The Officers got out of their vehicle and approached the Acura on foot. As they reached the rear portion of the Acura, Officer Dupont illuminated the inside of the Acura with a light and they both observed the driver, Licurtis Whitney, reaching with his right arm to the area behind his seat. (Tr. 35, 67-68) When Officer Dupont reached the driver's door, he told Whitney that he was being stopped for the turn signal violation, causing Whitney to sigh heavily. (Tr. 68, 76) Officer Dupont, following

standard procedure for a traffic stop, asked Whitney for his license and registration, asked Whitney to remove the keys from the ignition and hand them to the Officer, and asked Whitney to then place his hands on the steering wheel. This was done to protect the officers and to ensure that the driver would not attempt to leave during the traffic stop. (Tr. 18, 36, 45, 68-69)

Officer Dupont observed small white crumbs on Whitney's sweater or shirt that appeared to be crack cocaine. When Officer Dupont asked Whitney what the crumbs were, Whitney said "I don't know." (Tr. 36-37, 69, 84) The Officers also noticed that Whitney's hands were visibly shaking and his voice was shaky, and both men's breathing seemed labored. (Tr. 36, 68, 93)

Officer Dupont then shined his light onto the rear floorboard of the Acura behind the driver's seat and in the area in which he had seen Whitney reaching. Officer Dupont observed on the floor behind the driver a knotted clear plastic sandwich bag which contained a large chunk of an off-white substance which he recognized as being consistent with crack cocaine. (Tr. 37, 69-70) Officer Dupont placed Whitney under arrest. (Tr. 38, 70) This occurred less than one minute after the car was stopped. (Tr. 39)

Officer Stoddard had approached the passenger side of the vehicle. Officer Stoddard, using his flashlight, saw a knotted clear sandwich bag on Ewell's lap which was partially protruding from under Ewell's jacket and which contained an off-white substance which Officer Stoddard recognized as being consistent with crack cocaine. Officer Stoddard instructed Ewell to get out of the Acura and, when Ewell did so, the sandwich bag fell onto Officer Stoddard's foot. (Tr. 38, 46, 49-50)

Each knotted sandwich bag contained approximately 125 grams of cocaine base. Both bags were warm to the touch, which meant to the Officers that the cocaine base had recently been "cooked." (Tr. 71)

Whitney was charged with the turn signal violation, and both Defendants were charged with State offenses relating to the cocaine base. (Tr. 39)

On March 6, 2007, Whitney was arrested at his home in Pocomoke City, Maryland, on the instant Indictment, by ATF Special Agent (SA) David Gorrell and others. (Tr. 96) After Whitney was placed in a law enforcement vehicle, SA Gorrell advised him of his Miranda rights using a written form (See Government's Exhibit 1). SA Gorrell reviewed each of the paragraphs of this form with Whitney either by reading each to Whitney or having Whitney read each one aloud. After each right, SA Gorrell asked whether Whitney understood and then asked Whitney to place his initials next to the right to acknowledge that he understood, which Whitney did. (Tr. 96-97) Thereafter, the paragraph entitled "Waiver" was reviewed in the same manner, and Whitney indicated his agreement to waive his rights by signing and printing his name below that paragraph. Whitney thereafter made incriminating statements. (Tr. 97-98)

At the time of this arrest, Whitney was 29 years old. Whitney was calm and cooperative during the arrest and Miranda advice, and was described as intelligent. Whitney owned a trucking company in which he employed people and owned several real estate properties. Whitney was able to read and understand his Miranda rights. There was no indication that Whitney was under the influence of alcohol or drugs. Prior to this date, Whitney had been arrested on at least ten other occasions. (Tr. 98)

### 2. Argument and Authorities

#### A. Motions To Suppress Physical Evidence

The Government does not dispute the right of driver Whitney or passenger Ewell to challenge the recovery of the cocaine base from them. *Brendlin v. California*, 127 S.Ct. 2400, 2403 (2007)(both driver and passenger can challenge the constitutionality of a traffic stop).

A traffic stop is constitutionally reasonable when an objective review of the facts shows that the officer possessed specific, articulable facts showing that an individual was violating a traffic law at the time of the stop. *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3rd Cir. 2006).

In this case, the Acura was stopped for the traffic offense of making a turn without using a turn signal. The law is well settled that so long as there are objectively reasonable grounds for a traffic stop, it matters not that the officers making the stop may have had other motivations. *Whren v. United States*, 517 U.S. 806, 813 (1996)(Court does not entertain Fourth Amendment challenges based on the actual motivations of individual officers); *United States v. Delfin-Colina*, supra (3rd Cir. 2006)(quoting passage from *Whren* cited above); *Smith v. Marasco*, 318 F.3d 497, 514 (3rd Cir. 2003)("Improper motive, however, is irrelevant to the question whether the objective facts available to the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense"); *United States v. Toney*, 124 Fed.Appx. 713, 715 (3rd Cir. 2005)(where police have reason to believe traffic violation has occurred, their actual motives in conducting the traffic stop are irrelevant); *United States v. Ayers*, 2003 WL 292086, *5 (D.Del.)("the subjective intentions or thoughts of officers are irrelevant for review under the Fourth Amendment as long as there is probable cause to believe that even a minor crime has been committed").

The stop of the Acura in this case is factually similar to the stop at issue in *Whren v. United States*, supra, in which plainclothes vice officers in a "high drug area" of the District of Columbia saw a vehicle in suspicious circumstances. The officers watched the vehicle as it waited for an unusually long time at an intersection, then the vehicle made a right turn without signaling and sped away. The police followed and stopped the vehicle. When an officer

approached on foot, he observed inside the vehicle two large plastic bags of what turned out to be cocaine base in Whren's hands. The defendants claimed that stopping the vehicle to issue a traffic warning was pretextual and that there was no reasonable suspicion of drug activity to justify the stop. The Court disagreed and held that the temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment, even if a reasonable officer would not have stopped the vehicle without an additional law enforcement objective, and thus the actual motivations of the officers do not affect the constitutional analysis. 517 U.S. at 810-13.

Subsequently, courts have held that the Supreme Court in the passage cited above from *Whren* did not intend to change the standard for a traffic stop from reasonable suspicion to probable cause, and thus the reasonable suspicion standard is applied. *United States v. Delfin-Colina, supra*, at 397.

It is clear that the stop of the Acura was lawful as Corporal Brock personally observed the traffic infraction, providing at least reasonable suspicion to stop the vehicle. Indeed, Whitney was charged with the traffic offense. Within the first minute of and while conducting that traffic stop, Officer Dupont discovered the bag of cocaine base on the back floorboard behind Whitney and Officer Stoddard discovered the bag of cocaine base on the lap of Ewell. Both men were thus properly arrested and the evidence lawfully seized.

The scope of the actions taken by the officers in this case prior to the discovery of the drugs did not exceed the permissible bounds of the traffic stop. During a traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). In this case, the officers were in the very preliminary stages of the traffic stop when the drugs were discovered, thus there was no

Fourth Amendment violation.

### B. Motion To Suppress Whitney's Statements

**I.** On December 10, 2006, in the first few seconds of the traffic stop outlined above, Officer Dupont asked Whitney what the small white crumbs were that he observed on Whitney's sweater or shirt. Whitney replied that he did not know. At this point in the traffic stop, the drugs had not yet been discovered and Whitney had not been taken into custody. In order for the rights of *Miranda v. Arizona*, 384 U.S. 436 (1966) to apply, there must be both custody and interrogation. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). However, persons detained during a routine traffic stop are not deemed to be in custody for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)(where a question to a stopped motorist about his drinking after he had failed a field sobriety test was not deemed to be custodial interrogation under *Miranda*, the Court holding that the brief and public nature of a traffic stop would not cause a reasonable person to believe that he was in custody). *Accord, United States v. Anderson*, 859 F.2d 1171, 1177 (3rd Cir. 1988) (motorist not in custody even though officer received numerous suspicious explanations from the motorist for the presence of a large sum of currency and conducted a 10 to 15 minute search of the vehicle). Thus, the statement by Whitney denying knowledge of the small white crumbs is admissible, should the Government choose to offer that statement at trial.

**II.** On March 6, 2007, Whitney was arrested in Maryland on the instant Indictment by ATF agents. Whitney was advised of his *Miranda* rights, said that he understood them and wished to waive them, and executed a written ATF advice of rights and waiver form. Whitney thereafter made numerous incriminating statements about his drug trafficking activities.

It should be noted that Whitney made one statement about co-defendant Ewell's involvement with the drugs seized on December 10, 2006. The Government will not seek to

offer that specific statement into evidence at a joint trial of the defendants to avoid any issue under *Bruton v. United States*, 391 U.S. 123, 137 (1968).

To admit Whitney's remaining statements from the March 6 interview, the totality of the circumstances must disclose that he knowingly, voluntarily, and intelligently waived his *Miranda* rights. *Miranda*, 384 U.S. at 475; *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The voluntariness of a defendant's statement is based upon the trial court's consideration of all the circumstances surrounding the giving of the confession. 18 U.S.C. §3501(b); *Brewer v. Williams*, 430 U.S. 387, 402 (1987). The factual inquiry as to whether, considering all the circumstances, law enforcement officers have overborne the will of the accused centers on the conduct of the law enforcement officers as well as the suspect's capacity to resist any pressure by law enforcement. A "totality of circumstances" inquiry allows the trial court a flexible standard for determining voluntariness in light of both the characteristics of the accused and the details of the investigation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A defendant's prior arrests are a significant factor in determining the validity of a *Miranda* waiver because such a defendant is clearly aware of his rights and understands the significance of waiving those rights. *United States v. Pruden*, 398 F.3d 241, 246 (3rd Cir. 2005) ("numerous" prior arrests); *United States v. Palmer*, 203 F.3d 55, 61 (1st Cir. 2000) (16 prior arrests).

Clearly, the defendant's written waiver (Government Exhibit 1), age (29), intelligence (owned and operated a trucking business and owned several real properties), and familiarity with the criminal justice system (at least ten prior arrests) conclusively establish that he knowingly, voluntarily and intelligently waived his *Miranda* rights prior to making the statements at issue.

Respectfully submitted,

Colm Connolly
United States Attorney

By: /s/
Gregory Welsh
Special Assistant United States Attorney

cc: Eleni Kousoulis, Esq.
Peter Levin, Esq.