

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Gregory Welsh*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4906*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*
*TTY/TDD: 410-962-4462*

February 25, 2008

Honorable Joseph J. Farnan, Jr.
United States District Court
844 N. King Street
Wilmington, DE 19801

Re:   Reply Letter Memorandum
      United States v. Whitney & Ewell
      Criminal Case No. 07-028 JJF

Dear Judge Farnan:

The United States replies to the Memoranda filed by the Defendants in this matter. The Government stands by all of the facts and arguments contained in our initial Letter Memorandum, although all of those facts and arguments will not be repeated here.

### I. Motions To Suppress Physical Evidence

Defendant Whitney argues that the traffic stop was unlawful in that the officers had no reasonable, articulable suspicion that the Acura driven by him had committed a traffic infraction. (Whitney Memorandum, pp. 5-6) . Defendant Whitney argues that it would have been "very difficult" for Corporal Brock to observe a turn signal violation as he was following about a block behind the Acura. He argues that because of the drug information previously received about the Acura, Corporal Brock had a motive to "fabricate" the turn signal violation so that the vehicle could be stopped.

Defendant Ewell also argues, without specification, that Officer Stoddard's testimony was

inconsistent with that of Officers Brock and Dupont, and that Corporal Brock was the only officer to witness the traffic infraction. (Ewell Memorandum, p. 10)

A traffic stop is constitutionally reasonable when an objective review of the facts shows that the officer possessed specific, articulable facts showing that an individual was violating a traffic law at the time of the stop. *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3rd Cir. 2006).

The credibility of the officers is clear from both their demeanor on the witness stand and the content of their testimony. This Court had the opportunity to observe their testimony and conclude that they was honest and straight forward in their description of the events of December 10, 2006. Corporal Brock had over seven years of experience as a police officer with the Wilmington Police Department and was assigned to a specialized unit formed to curb violent and drug-related crime. (Tr. 4-5) He testified that after seeing the Acura, he circled the block and when he returned to the intersection of 27th Street and N. Madison Street, he observed that the Acura had turned southbound on N. Madison Street and was about a block away. Corporal Brock followed the Acura to the intersection of 24th Street and N. Madison Street, where he saw the Acura make a right turn onto 24th Street without using a turn signal, in violation of 21 Del.C. § 4155. (Tr. 7, 33-34, 52-53, 66, 90) The Acura and Corporal Brock's vehicle were the only ones being operated on N. Madison Street at that time. (Tr. 7-8, 15) There was nothing obstructing his view.

Corporal Brock immediately informed Officers Dupont and Stoddard by radio that he had witnessed the traffic infraction. (Tr. 8, 16-17, 34, 41, 52-53, 66, 73-74, 90) Upon stopping the vehicle, Officer Dupont immediately informed Defendant Whitney that he was being stopped for a turn signal violation. (Tr. 36, 45, 68, 76) Defendant Whitney was charged with the turn signal traffic infraction. (Tr. 39)

2

Officer Stoddard had over ten years of experience as a Delaware Probation Officer and a Wilmington police officer and was also assigned to the specialized unit. (Tr. 31-32) Officer Dupont had over eight years of experience as a Delaware Probation Officer and had been on the specialized unit for over five years. (Tr. 65)

The demeanor of all three officers on the witness stand; their experience; Corporal Brock's observation of a traffic infraction by the vehicle in which he was interested, the only other vehicle moving on the street at that time; his immediate report to the other officers that the turn signal violation had occurred; Officer Dupont's immediate advice to Defendant Whitney that he was being stopped for the turn signal violation; and the fact the Defendant Whitney was charged with the traffic infraction, all lead to the inescapable conclusion that their testimony was accurate, that Defendant Whitney committed the traffic violation, that the officers had a reasonable, articulated suspicion that the traffic infraction had occurred, that the vehicle was stopped for that traffic violation, and that Corporal Brock did not fabricate this testimony.

Defendant Whitney also complains that it was unlawful for the officers to shine their lights into the vehicle. (Whitney Memorandum, p. 6) Officers Dupont and Stoddard did shine their lights into the vehicle, which had tinted glass windows, for their own safety. (Tr. 35, 46-47, 67) However, the Supreme Court has established that it is lawful for a police officer to shine a flashlight to illuminate the interior of a vehicle that has been stopped for a traffic offense. *Texas v. Brown*, 460 U.S. 730, 739-40 (1983)(such an illumination "trenched upon no right secured ... by the Fourth Amendment").

Defendant Ewell argues that the tip from the informant about the Acura was unreliable and uncorroborated. (Ewell Memorandum, p. 9) However, that issue is quite beside the point and this

Court need not reach it, as the vehicle was stopped not based on probable cause of drug activity but rather for the traffic infraction. The Supreme Court has established that so long as there are objectively reasonable grounds for a traffic stop, it matters not that the officers making the stop may have had other motivations. *Whren v. United States*, 517 U.S. 806, 813 (1996) (Court does not entertain Fourth Amendment challenges based on the actual motivations of individual officers). *See, also, United States v. Delfin-Colina, supra, and other cases cited in the Government's Letter memorandum.*

Based on the arguments in the Government's initial Memorandum and the above arguments, it is submitted that there was no constitutional violation in the recovery of the crack cocaine, and it should be admitted into evidence at the trial of this case.

## II. Motion To Suppress Whitney's Statements

**A.** On December 10, 2006, in the first few seconds of the traffic stop, Officer Dupont asked Whitney what the small white crumbs were that he observed on Whitney's sweater or shirt. Whitney replied that he did not know.

Defendant Whitney argues that he was subjected to custodial interrogation at the time that this statement was made, and it must be suppressed because he did not receive his *Miranda* warnings. (Whitney Memorandum, pp. 6-7).

Defendant Whitney acknowledges that persons detained during a routine traffic stop are not deemed to be in custody for *Miranda* purposes. *See, Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)(where a question to a stopped motorist about his drinking after he had failed a field sobriety test was not deemed to be custodial interrogation under *Miranda*, the Court holding that the brief and public nature of a traffic stop would not cause a reasonable person to believe that he was in custody).

*Accord, United States v. Anderson*, 859 F.2d 1171, 1177 (3rd Cir. 1988) (motorist not in custody even though officer received numerous suspicious explanations from the motorist for the presence of a large sum of currency and conducted a 10 to 15 minute search of the vehicle).

Whitney argues, however, that the traffic stop was not sufficiently of a "public nature" to put it within the aegis of the *Berkemer* decision. In *Berkemer*, the Supreme Court was examining whether a traffic stop "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." 468 U.S. at 437. The Court discussed two aspects of a traffic stop that mitigate the danger that a person would be induced to speak where he would not otherwise do so freely. First, the detention is presumptively temporary and brief. Certainly, Whitney's detention for just a few moments prior to the discovery of the drugs was just that. The Court stressed that it was the defendant's state of mind under consideration here, when it stated that the motorist's expectations are that he will be briefly detained and then most likely free to go. *Id.* Thus, the subjective intentions of the officers are of no moment. Second, the circumstances surrounding a typical traffic stop are not such that the person feels at the mercy of the police. The exposure of a traffic stop to public view diminishes a motorist's fear that he might be subject to abuse. 468 U.S. at 438. Certainly, Whitney's traffic stop occurred in a most public place, in a well-lighted area on a major city street near its intersection with a major interstate highway. The fact that the stop happened at night when there were few other vehicles around does convert the place of the stop from a highly public place to a remote, jail-like space. Thus the ruling of *Berkemer* applies, the Defendant was not in custody for *Miranda* purposes, and need not have been given the *Miranda* warnings during the traffic stop prior to the discovery of the drugs.

5

The statement by Whitney denying knowledge of the small white crumbs is therefore admissible, should the Government choose to offer that statement at trial.

**B.** On March 6, 2007, Whitney was arrested in Maryland on the instant Indictment by ATF agents. Whitney was advised of his *Miranda* rights, said that he understood them and wished to waive them, and executed a written ATF advice of rights and waiver form. Whitney thereafter made numerous incriminating statements about his drug trafficking activities.

Defendant Whitney first infers that ATF Special Agent Gorrell had some responsibility to inform Whitey that prior statements that Whitney made to Maryland police officers and DEA agents could not be used against him. Not surprisingly, Whitney offers no case authority for this proposition, and it is patently meritless. There can be obligation under *Miranda* save for those specific requirements set forth therein. Special Agent Gorrell in fact complied with all of those requirements.

Defendant Whitney's challenge to his statements of March 6 is based upon an assertion by his lawyer that Whitney "thought that he was bound by his prior statements" on the prior date made to other law enforcement officers. (Whitney Memorandum, p. 8) The obvious fatal flaw in this argument is that there was absolutely no evidence presented at the hearing that Whitney had any such thoughts.

To admit Whitney's remaining statements from the March 6 interview, the totality of the circumstances must disclose that he knowingly, voluntarily, and intelligently waived his *Miranda* rights. *Miranda*, 384 U.S. at 475; *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Clearly, the defendant's written waiver (Government Exhibit 1), age (29), intelligence (owned and operated a trucking business and owned several real properties),

and familiarity with the criminal justice system (at least ten prior arrests) conclusively establish that he knowingly, voluntarily and intelligently waived his *Miranda* rights prior to making the statements at issue.

Respectfully submitted,

Colm Connolly
United States Attorney

By: /s/ Gregory Welsh
Gregory Welsh
Special Assistant United States Attorney

cc:  Eleni Kousoulis, Esq. (by electronic filing)
     Peter Levin, Esq. (by mail)